JAMES W. SKENE *vs.* JOHN R. GRAHAM, et al.

Kennebec.    Opinion June 6, 1917.

*Registration of automobiles.    R. S., 1916, Chap. 26, Sec. 23, interpreted.*
*Rule as to Law Court considering evidence*
*not included in bill of exceptions.*

1.   A corporation as well as an individual may adopt a trade name.

2.   A corporation whose corporate name was the Wade & Dunton Carriage Company was a dealer in automobiles, which business it carried on under the name of the Wade & Dunton Motor Company, and by which name it obtained a dealer's certificate of registration.   It is held that the registration was a compliance with the provisions of R. S., 1916, Chap. 26, requiring registration of automobiles.

3.   If the presiding Justice in his charge to the jury incorrectly states the claim or contention of a party, or if he states without warrant that a particular fact is admitted, it is the duty of counsel at the time to call his attention to his error specifically, that he may correct it.   If this is not done the error is waived.

4.   An exception to an instruction given to the jury will not be sustained when from the bill itself it is impossible to determine whether the instruction was prejudicial or not.

5.   In this case, there is sufficient evidence to sustain the verdict for the plaintiff on the question of liability.

Action on the case to recover damages for injuries received by plaintiff through the alleged negligence of defendants' chauffeur. Defendant filed plea of general issue.   Verdict for plaintiff in the sum of $1,200.00.   Defendant filed motion for new trial; also exceptions to certain rulings of presiding Justice.   Exceptions sustained.   If within thirty days after the mandate is received by the clerk the plaintiff shall remit all of the verdict in excess of $600.00, motion overruled; otherwise motion sustained.

Case stated in opinion.

*Williamson, Burleigh & McLean,* for plaintiff.

*Ryder & Simpson,* for defendants.

SITTING: SAVAGE, C. J., KING, BIRD, PHILBROOK, MADIGAN, JJ.

SAVAGE, C. J.   This is a case of collision between two automobiles. It has been before this court once before, and a verdict for the plaintiff was set aside. *Skene* v. *Graham*, 114 Maine, 229.   Upon a retrial, the plaintiff prevailed, and the case comes up now on the defendant's motion for a new trial and exceptions.

THE EXCEPTIONS:  The first exception is to the refusal of the presiding Justice to direct a verdict for the defendants, for the reason that the automobile driven by the plaintiff was not registered as required by statute, and therefore was unlawfully upon the road, and for the further reason that there was no evidence that the defendants were negligent.

Whether non-registry, if it were so, would defeat the action, we have no occasion at present to decide.   We think the jury might properly find that the automobile the plaintiff was driving was legally registered.   The facts are these. · The plaintiff was an automobile salesman in the service of the Wade & Dunton Carriage Company, a corporation, and the automobile which he was driving belonged to that company.   But the Wade & Dunton Carriage Company carried on an automobile business, buying, selling and repairing.   This business was kept essentially separate and distinct from its other business, and was carried on in a separate part of the plant.   There was an office for its general business, and another office for the automobile business.   The automobile business was carried on in the name of the Wade & Dunton Motor Company. The Wade & Dunton Motor Company was a department of the Wade & Dunton Carriage Company.   The Wade & Dunton Motor Company held a dealer's license, or registration certificate.

By the statute, Laws of 1911, Chap. 162, Sec. 8, (R. S., 1916, Chap. 26, Sec. 23) all motor vehicles are required to be registered by the owners or persons in control of them.   But Section 9 provides that a dealer, instead of registering each motor vehicle owned or controlled by him, may obtain a certificate of registration, and that his cars shall then be considered as registered until sold.   The Wade & Dunton Motor Company certificate covered the car in question. The question is whether such registration was legal.   We think it was.

The purpose of the requirement of registration seems to be two-fold,—to obtain revenue, and to make it possible to trace the identity of a car if it should be necessary. The revenue feature is unimportant in this case. The other feature merits attention. Upon registration, the owner of each car receives a number plate to be so attached to the front and rear of the car as to be plainly visible. Similar plates must be attached to cars owned or controlled by dealers. Sections 8 and 9. By observing the number on a plate, followed by reference to the records of the Secretary of State, the identity of the owner, or person in control, can be ascertained readily, whenever desired by officers of the State or by individuals. We think the purpose of the statute was served in this case. It is, of course, settled that a corporation as well as an individual may adopt a trade name, and all its business transactions in that name are valid. The Wade & Dunton Carriage Company adopted the trade name of the Wade & Dunton Motor Company. A jury might find that it was well known in the community by that name so far as its automobile business was concerned. Registration in the trade name was not a sham. It was not false. It was not done to avoid the statute, and to conceal identity. It was registration by the owner in the name in which it did business with all men. We think that was a sufficient compliance with the statute. *Crompton* v. *Williams*, 216 Mass., 184. The exception is not sustainable on this ground.

The other point under this exception, the lack of evidence of the negligence of the defendants, we will consider in connection with the motion.

The next exception relates to a sentence in the charge of the presiding Justice. He said; "I understand, and I say this with the consent of both counsel, that the plaintiff claims he came down on the north side of Western Avenue until he got to where the obstruction ceased, and then crossed over to the south side from there down to the corner of Sewall Street; and that is admitted to be the testimony." Counsel in their brief say: "The presiding Justice erred in making the statement that the plaintiff turned upon reaching the obstruction. The jury may have been prejudiced by the statement." There are two answers to this contention. First, the presiding Justice did not state, as counsel seem to understand, that the plaintiff turned at the point referred to. The presiding Justice was talking of the plaintiff's claim, and that he might properly do. And again, if he stated the

claim incorrectly, or if he stated without warrant that that was "admitted to be the testimony," it was the duty of counsel at the time to call his attention to his error specifically, so that he might correct it. *Jameson* v. *Weld*, 93 Maine, 345. This apparently was not done.

Th occasion of the third and last exception arose in this way. The jury came in for further instructions. The foreman said they wanted to know if the plaintiff came down next to the track when he was on the north side of the road. The stenographer looked over the evidence, but found none on that point. The presiding Justice said, "There is no evidence to show," and added, "It is proper for me to say to you that what the plaintiff was doing up above there can have little probative force on the situation down here; whether he was driving on one side or the other had no connection with this down here. The question is, where after he had left the obstruction was he driving. Then you come down to the moment of the accident, because contributory negligence must be with reference to a particular thing. Did it have a connection with the accident itself." The bill of exceptions is barren of any statement of fact, or contention upon the evidence, to which this instruction could be applied. From the bill itself it is impossible to determine whether the instruction was prejudicial or not. And as we have said many times, we are not permitted to travel outside of the bill. *Doylestown Agr. Co.* v. *Brackett, etc., Co.*, 109 Maine, 301; *Salter* v. *Greenwood*, 112 Maine, 548; *Dennis* v. *Packing Co.*, 113 Maine, 159; *Borders* v. *B. & M. R. R.*, 115 Maine, 207.

THE MOTION: We think there is sufficient evidence to sustain the verdict on the question of liability. When this case was considered by the court the first time we were of opinion that the overwhelming weight of the evidence supported the defendant's contentions. At the last trial the situation was materially changed. Between the two trials one of the defendants, Mr. Graham, had died. At the last trial his evidence given at the former trial was not offered. The other defendant, Mrs. Graham, did not testify. Therefore the plaintiff could not testify, if objection was made, and objection was made. The plaintiff relied upon the testimony of two apparently disinterested witnesses, one of whom did not testify at the former trial. They both testified that they were eye witnesses of the collision. The defendants rely upon the testimony of their chauffeur. The

witnesses for the plaintiff disagreed with the witness for the defendant, in respect to the speed at which the cars respectively were proceeding, and as to the position of the cars, particularly that of the plaintiff just prior to the accident. The testimony for the plaintiff tends to show that the defendants' car ran into the plaintiff's car, while that for the defendants tends to show that their car was run into by the plaintiff's car. The parties draw differing inferences from the condition of the cars after the collision.

The collision occurred on Western Avenue in Augusta, at its junction with Sewall Street. The plaintiff was going easterly; the defendants, westerly. Westerly from Sewall Street, and beginning about 168 feet therefrom the south side of the road for some distance had been torn up for repairs, and travel both ways was confined to the space occupied by the street railway track in the center and the road north of the track. There was sufficient room, however, for teams to pass each other. While passing along this stretch of road the plaintiff was on the northerly side of the road, which was to him the left hand side. His witnesses testified that when he reached the easterly end of the obstruction he turned to the south side, and proceeded along the south side until his car was struck by the defendants' car; that the defendants' car was going up Western Avenue at a speed estimated at 25, 30 or more miles an hour, and that it turned across the street, and hit the plaintiff's car with such force as to shove it sideways several feet on the road.

The defendant's chauffeur testified that they were going up on the right hand side of Western Avenue at a speed of twelve to fifteen miles an hour, that the plaintiff's car was approaching on the same side and that there seemed to be imminent danger of a head-on collision; that to avoid the collision he turned to the left, that the plaintiff turned to his right at about the same instant of time, that the defendants' car was brought to a stop on the south side of the road, and that when stopped it was run into by the plaintiff's car. According to the chauffeur's testimony the cars were less than one hundred feet apart when he began to turn.

The south side of the road being impassable, it was not unlawful for the plaintiff to travel on the north side, at his left hand. He was not in fault in that respect if he turned to the right seasonably after he passed the obstruction. But the situation was one of some danger at the best, and demanded corresponding watchfulness. The chauffeur

saw the situation. He could slow down or stop or turn. It is altogether probable that the approach of the plaintiff's car caused him to begin to turn.

But the chauffeur says that the plaintiff's car turned at the same time. The jury may have thought that if the defendants' car was going no faster than he said, he could have stopped it before the point of collision was reached, had he been watchful and alert. Or, they may have concluded that approaching a situation of danger he allowed the car to go so fast that he could not stop it in time. In either case the chauffeur might be regarded as negligent. The injuries to the cars were such that we think a jury would be warranted in concluding that the defendants' car struck the plaintiff's car. This would tend to corroborate the plaintiff's contention. It would also tend to discredit the chauffeur's account of how the collision occurred. In the end it is very largely a question of the credibility of the witnesses. Of that a jury is always best qualified to judge. It is true, indeed, that it is not necessarily negligence, if one in a sudden emergency chooses an unwise course. Whether or not it is negligence under the circumstances is likewise a question for the jury, whose conclusion will not be disturbed unless manifestly wrong.

Besides there is evidence which we think a jury would be warranted in believing that Mr. Graham said to Mr. Skene at the time,—"You should be carried to a doctor right off, and I shall pay the bills"; also, "I will see to this myself, but I have got to be in Portland tonight. You tell Mr. Dunn to see to it." Mr. Dunn was the local superintendent of the electric railroad of which Mr. Graham was president. This evidence, if true, is of considerable weight either as tending to show where Mr. Graham thought the responsibility lay, or that Mr. Graham out of his kindness was proposing to pay the expenses of the man who had negligently run into him. The jury might decide which.

Again, there is evidence from the same witness that Mr. Graham asked the chauffeur "how he happened to run in," and that the chauffeur replied. "I don't know." That tended to impeach the chauffeur as a witness.

The burden is on the defendants in this court to show that the verdict was clearly wrong. Upon the whole we are not persuaded that the jury might not properly conclude that the defendants were liable.

The defendants insist that the verdict was too large. And a majority of the court are clearly of that opinion.

> *Exceptions sustained.*
> *If within 30 days after the mandate is received by the clerk, the plaintiff shall remit all of the verdict in excess of $600; motion overruled; otherwise, motion sustained.*